Kathleen Marie BROWN, Plaintiff,

v.

Daniel O'BANNON, City and County of Denver, Joseph Duncan, Robyn Strongwater, Comitis Crisis Center, Defendants.

No. Civ.A. 99–K–412.

United States District Court,
D. Colorado.

Feb. 17, 2000.

Kathleen M. Brown, Denver, CO, plaintiff pro se.

Theodore Samuel Halaby, John Arthur Halaby, Matthew Alan Samuelson, Halaby, Cross & Schluter, Denver, CO, for Daniel O'Bannon, Denver Police Department, Joseph Duncan, City and County of Denver, defendants.

Timothy P. Schimberg, Susan Ruth Hahn, Fowler, Schimberg & Flanagan, PC, Denver, CO, for Robyn Strongwater and Comitis Crisis center, defendants.

## ORDER ON MOTION TO DISMISS

KANE, Senior District Judge.

This *pro se* civil rights and state law defamation action arises out of a December 31, 1997 incident in which Denver Police Officers Daniel O'Bannon and Joseph Duncan were dispatched to Plaintiff's apartment after receiving a telephone a report from Comitis Crisis Center employee Robyn Strongwater that Plaintiff was "suicidal." Plaintiff denies she was suicidal and claims Strongwater overreacted in calling the police. When the Officers O'Bannon and Duncan arrived, Plaintiff claims they used excessive force and abusive language, handcuffing her, laughing at her, tearing her telephone out of the wall, and detaining her in her apartment against her will. Plaintiff filed suit, naming Strongwater, Comitis Crisis Center ("Comitis"), the City, and the individual police officers as defendants. Comitis now moves to dismiss.

This case exemplifies the difficulties *pro se* civil rights filings present for courts charged with administering them. In this case alone, I have held two status/scheduling conferences and issued several orders in an attempt to conform Plaintiff's myriad allegations into a proper civil action asserting cognizable claims for relief. Plaintiff, despite her best intentions and efforts to apprise herself of the applicable rules and underlying law, has simply been unable to do so.[1] Plaintiff's allegations do not state viable claims against either Comitis or Strongwater for the federal civil rights and state law privacy and defamation causes of action alleged.

### I.  *Federal Civil Rights (42 U.S.C. § 1983) Claims.*

█ Section 1983 of Title 42 of the United States Code provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

1. Plaintiff's initial Complaint asserted six claims, each of which included numerous overlapping and alternative constitutional and "privacy" theories of relief, set forth over 15 single-spaced typewritten pages of narrative allegations. To the extent specific theories of relief could be discerned at all, several appeared legally void and subject to *sua sponte* dismissal. In addition to invalid constitutional "negligence" claims against Officers O'Bannon and Duncan, for example, Brown claimed Comitis and Strongwater should be held liable and pay her damages for "acting beyond [their] abilities" and "[offering] a detrimental standard of care to the community." Compl. ¶¶ 70, 74. In the status conference held August 17, 1999, I dismissed four of those theories for relief on my own motion, and directed Plaintiff to file an Amended Complaint within 20 days "specifying with particularity her claims against Defendants Robyn Strongwater and Comitis Crisis Center." *See* Minutes, hg. dated 8/17/99 at p. 1. In response, Plaintiff refiled, verbatim, her original 15–page Complaint *with an additional* nine single-spaced pages of narrative allegations regarding the alleged misconduct and unprofessionalism of Comitis and its employee, Strongwater. In an apparent misapprehension of my August 17 rulings dismissing four of her theories of relief, Plaintiff crossed out the numbers corresponding to four of her original 77 allegations and retained the invalid theories of relief as originally drafted. I issued a separate Minute Order on September 14, 1999, explaining the deficiencies in her Amended Complaint, clarifying my August 17 rulings and clearly identifying each of the theories of relief the had been dismissed, directing Plaintiff "to consult at least one treatise" on federal practice and procedure (suggesting Wright & Miller or Moore's Federal Practice), and giving Plaintiff one more chance to file "a proper Amended Complaint." Minute Order at p. 2. Plaintiff's Second Amended Complaint, now comprised of 19 double-spaced pages, asserted various § 1983 excessive force, unlawful seizure, and failure to train unconstitutional deprivation claims against the City and Officers O'Bannon and Duncan, and claimed the "slanderous and libelous" statements of Strongwater, as well as the failure of Strongwater and Comitis to follow proper procedure, were also "proximate causes" of these deprivations.

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

The statute was enacted in 1864 to provide a means for recently freed slaves and others to combat the actions of the Ku Klux Klan, and provides all individuals with a cause of action against "persons"—defined, under limited circumstances, to include local governmental entities like cities and counties [2]—who violated their constitutional or statutory rights while acting under color of state law. Except under certain narrow circumstances neither alleged nor applicable in this case, private individuals and entities are not suable under § 1983.

■ Plaintiff admits Strongwater was a private individual and Comitis a private organization, but asserts Strongwater was acting "as an arm of the government" when the police responded to her call that Plaintiff was "suicidal." The Tenth Circuit has explicitly rejected this theory of state action, finding in *Pino v. Higgs*, 75 F.3d 1461, 1465–66 (10th Cir.1996), that a social worker/therapist employed by a nonpublic organization does not become a "state actor" for purposes of § 1983 liability simply because a state police officer responds to her call by transporting or detaining that person. Under *Pino*, Plaintiff's claim that Strongwater was a state actor subject to liability under § 1983 for violating her constitutional rights fails as a matter of law. Further, and because a governmental entity may not be held liable under a respondeat superior theory for the acts of its employees, *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Plaintiff's claim that Comitis "as [Strongwater's] employer is

responsible for [her] words" (Second Am. Compl. ¶ 65) fails to state a claim against Comitis even if Comitis could be considered a suable "person" under § 1983.

## II. *Plaintiff's State law Claims.*

### A. *Statutory Claims.*

■ While Plaintiff endeavors in her Second Amended Complaint to articulate a specific list of state law claims against Strongwater and Comitis, state law simply does not recognize them as causes of action. For example, Plaintiff seeks damages from Comitis for "violating [a] standard of care to the community and Plaintiff," "improper[ly] supervis[ing] and training [Strongwater]," and "misleading advertising," *see* Second Am.Compl. at 1, without citing specific statutes or other legal authority that provide for a private cause of action for damages against those who violate them. The statutes Plaintiff does cite govern the licensing and regulation of psychotherapists, psychologists, social workers, marriage and family therapists, and other professional counselors (*see* Colo.Rev.Stat. §§ 12–43–202 ff.), and are enforceable by the state through law enforcement and regulatory agencies authorized thereunder to revoke licenses, levy fines and the like. Even assuming, for the sake of argument, that Strongwater was a professional counselor whose conduct was governed by these statutes, none would authorize a private citizen like Brown to sue her for damages. *See Axtell v. Park School Dist.*, 962 P.2d 319, 320–21 (Colo.App.1998) (Colorado's Certificated Personnel Performance Act, Colo. Rev.Stat. § 22–9–101 *et seq.* does not create a private right of action on behalf of

---

**2.** The principle of sovereign immunity articulated by the Eleventh Amendment to the United States Constitution precludes § 1983 damages claims from being asserted against individual states, state employees acting in their official capacities and state entities acting as "arms of the state." *See Will v. Michigan Department of State Police,* 491 U.S. 58, 69–70, 109 S.Ct. 2304, 105 L.Ed.2d 45

(1989); *applied in Meade v. Grubbs,* 841 F.2d 1512, 1525 (10th Cir.1988) (finding Oklahoma Department of Health, Oklahoma Council on Law Enforcement Education and Training, and Oklahoma Attorney General's office to be "arms of the State" and subject to Eleventh Amendment immunity against § 1983 damages action).

teacher who allegedly had not been properly evaluated under that Act).

Whether a statute creates a private right of action is a question of law. *Id.* at 320. Courts will not infer a private right of action based on an alleged violation of a statute unless there is a clear intent by the General Assembly to create such a cause of action. *Id.* at 321. Moreover, when the General Assembly enacts remedies other than private damages to redress a statutory violation, a private cause of action is precluded. *Id.* (citing *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913 (Colo.1997)). The statutes in question provide specific remedies for noncompliance and preclude the inferring of a private cause action for damages thereunder.

Similarly misplaced is Plaintiff's reliance on Colorado's emergency commitment procedures statute, Colo.Rev.Stat. § 27–10–105, as a source for any cause of action against Strongwater or Comitis. The statute identifies categories of individuals who may lawfully cause a person to be taken into custody for placement in a seventy-two hour treatment and evaluation facility when that person appears to be "an imminent danger to others or to ... herself." Not only is there no private right of action for damages under the statute, but Plaintiff was never taken from her apartment or "committed" for treatment as would render it applicable in this case in any event. This claim, as well as the others invoking a private right of action for damages under Colorado statutes governing counselors and the delivery of mental health services generally, fails as a matter of law and must be dismissed.

### B. Common Law Claims—Invasion of Privacy and Defamation.

Finally, Plaintiff's assertions that Strongwater "violated Plaintiff's right to privacy by casting her in a false light when calling police authorities" and gave them information that "was slanderous and libelous as it was untrue" (Second Am.Compl. ¶¶ 64–65) fail to state viable claims for relief against either Strongwater or against Comitis as her employer. Plaintiff's sole allegations regarding the substance of Strongwater's statement to police was that she told police Plaintiff was "suicidal," that this was "untrue," and that the information "was dispensed in a manner which ultimately caused [Plaintiff] to be humiliated and injured." (*Id.*)

"Invasion of privacy" is a generic term for a number of separate torts commonly identified as: (1) publicity that places one in a false light in the public eye; (2) appropriating one's name or likeness for another's benefit; (3) public disclosure of private facts, which concerns the communication or publication to third parties of information or activities which a person has held private; and (4) intrusion upon seclusion, which focuses on the manner in which information that a person has kept private has been obtained. *Doe v. High–Tech Institute, Inc.,* 972 P.2d 1060, 1064–65 (Colo.App.1998), *as modif'd on den. of reh'g* (July 9, 1998). Although all of these claims concern, in the abstract, the concept of being left alone, each tort has distinct elements and establishes a separate interest that may be invaded. *Id.* at 1065.

Colorado courts look to the Restatement (Second) of Torts to supply the standard of proof for invasion of privacy actions. *See High–Tech* at 1065 (applying Rest.2d Torts § 625B as standard for proving "intrusion upon seclusion"). A person is subject to liability under Restatement § 652E for "giving publicity to a matter concerning another that places the other before the public in a false light ... if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Liability is limited to the situation in which plaintiff is given publicity. Rest.(2d) Torts, § 652E, Comment *a.* On what constitutes publicity, the Institute refers to Comment *a* of § 652D ("publicity given to

private life"). *Id.* "'Publicity,'" as it is used in § 652D, "differs from 'publication' as that term is used ... in connection with liability for defamation." Rest.2d Torts § 652D, Comment *a.* "Publicity" means specifically that the information "is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* The difference "is not one of the means of communication, which may be oral or written, but ... '[o]ne of a communication that reaches, or is sure to reach, the public.'" *Id.* Thus, a communication by a shopowner, to a customer's employer, stating that the customer owes him money and won't pay, is *not* an invasion of the debtor's privacy, whereas the shopowner's posting of a statement, in the window of his shop, that the customer owes him money and won't pay is such an invasion. *Id.,* Illustrations 1 & 2.

■ Under this standard, Plaintiff's allegations fail to state a cause of action for "false light" invasion of privacy. Plaintiff does not allege Strongwater communicated her statement to anyone other than the police and there are no allegations in her Complaint from which "communication to the public at large" can be inferred. Accordingly, Plaintiff's claim against Strongwater and Comitis for invasion of privacy must be dismissed.

■■ The elements of a cause of action for defamation in Colorado are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Stump v. Gates,* 777 F.Supp. 808, 825 (D.Colo.1991) *aff'd,* 986 F.2d 1429 (10th Cir.1993). A statement is defamatory "'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Burns v. McGraw-*

*Hill Broadcasting Co.,* 659 P.2d 1351, 1357 (Colo.1983) (quoting Restatement (Second) of Torts § 559 (1976)). *See* Colo. Jury Instr., 4th Civil 22:8 (1999).

■■ Where, as here, a plaintiff's complaint is bereft of any allegation of special damages attributable to the defamatory statement, the statement is actionable only if, on its face and without the aid of extrinsic proof, it is unmistakably recognized as injurious. *Fort v. Holt,* 508 P.2d 792, 794 (Colo.App.1973) (only statements rendering plaintiff "contemptible or ridiculous in public estimation, expose[s] [plaintiff] to public hatred or contempt, or hinder[s] virtuous men from associating with them" are actionable in the absence of special damage allegations). It is for the court to determine whether a statement is libelous or slanderous per se. *Lininger v. Knight,* 123 Colo. 213, 226 P.2d 809 (1951).

■ In *Fort,* the Colorado Court of Appeals upheld the dismissal of a defamation claim based on allegations that plaintiff had been committed to an insane asylum. The court rejected contentions that the statement was akin to imputing to plaintiff "a condition of having a loathsome disease," which imputation would support a claim for defamation even in the absence of special damages, or that it was libelous per se. Given the context in which Strongwater's statement was uttered, under the facts as alleged by Plaintiff, the assertion that Plaintiff was "suicidal" rises not even to the level of that which was rejected in *Fort* and cannot support a claim for defamation as a matter of law. Because Plaintiff alleges no facts from which a colorable defamation claim may be inferred, this claim, too, must be dismissed under Fed.R.Civ.P. 12(b)(6).

Accordingly, and for the foregoing reasons, Plaintiff Kathleen Marie Brown's claims against Robyn Strongwater and Comitis Crisis Center are DISMISSED in their entirety under the standard set forth in Fed.R.Civ.P. 12(b)(6). Judgment shall enter in favor of these Defendants and

against Plaintiff. Defendants are dismissed as parties to this action.